IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

JENNIFER M. RICE,           )
                                 )
      Plaintiff,        )
                                 )
v.                           )        CASE NO. 1:19-CV-791-KFP
                                 )
ANDREW SAUL,          )
Commissioner of Social Security,  )
                                 )
      Defendant.      )

## MEMORANDUM OPINION AND ORDER

On August 29, 2016, Plaintiff Jennifer M. Rice filed applications for a period of disability, Disability Insurance Benefits, and Supplemental Security Income based on various physical and mental impairments, alleging an onset date of April 1, 2016.[1] T. 21. On December 19, 2018, after appropriate proceedings, the Administrative Law Judge issued an unfavorable decision, finding Plaintiff was not disabled. T. 18-35. Plaintiff seeks judicial review of that decision (*see* Doc. 1), and judicial review now proceeds under 42 U.S.C. §§ 405(g) and 1383(c)(3). Upon careful consideration of the parties' briefs (Docs. 14, 15) and the transcript (Doc. 16), the undersigned AFFIRMS the Commissioner's decision for the reasons set forth below.

---

[1] The parties and the ALJ all agree to this timeline. *See* Doc. 14 at 1; Doc. 15 at 2; T. 21. However, the parties cite to portions of the record indicating that Plaintiff completed her applications for Disability Insurance Benefits and Supplemental Security Income on September 16, 2016 (T. 195, 199), alleging an onset date of April 1, 2016 as to the benefits (T. 195) and August 29, 2016 as to the income (T. 199). Because the parties agree and because Plaintiff's exact filing and onset dates are immaterial to the issue presented in this Order, the Court will accept the parties' agreed upon timeline as correct.

## I.   STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). "The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla— i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales,* 402 U.S. 389 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the Court would have reached a contrary result as finder of fact and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence that is favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d

129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]"; instead, it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse the Commissioner's decision on plenary review if the decision applies incorrect law or if the decision fails to provide the Court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

## II.   STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general Disability Insurance Benefits ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based on proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)–(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore,

3

claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).

Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act, which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to do the following:

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine if a claimant is entitled to benefits:

(1)   Is the person currently unemployed?
(2)   Is the person's impairment(s) severe?
(3)   Does the person's impairment(s) meet or equal one of the specific impairments set forth in Listing of Impairments in Appendix I of 20 C.F.R. Pt. 404, Subpt. P?
(4)   Is the person unable to perform his or her former occupation?
(5)   Is the person unable to perform any other work within the economy?

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920 (2010). An affirmative answer to any of the above questions leads either to the next

question or, on Steps 3 and 5, to a finding of disability. A negative answer to any question except Step 3 leads to a determination of "not disabled." *McDaniel*, 800 F.2d at 1030; 20 C.F.R. § 416.920(a)–(f).

The claimant carries the burden of proof through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying for disability once they meet their burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To complete Steps 4 and 5, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238–39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and non-exertional limitations. *Id.* at 1242–43. At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "disabled" or "not disabled." *Id.*

### III.   BACKGROUND

#### A.  Factual Background

Plaintiff was 45 years old at the time of the ALJ's decision. T. 46. She previously obtained her GED and had past relevant work experience as a delivery driver, a fast-food worker, and a fast-food team leader. T. 46, 61-62. Plaintiff alleges a disability due to fibromyalgia, PTSD, bipolar disorder, depression, anxiety, and degenerative disc disease. T. 216.

#### B.  Administrative Proceedings

On August 29, 2016, Plaintiff protectively filed a Title II application for a period of disability and DIB and a Title XVI application for SSI, alleging disability beginning April 1, 2016. T. 21. The agency denied Plaintiff's claims at the initial level, and she requested a hearing before an ALJ. T. 98-132, 136-41, 145-47. Following a hearing (T. 40-68), the ALJ issued an unfavorable decision on December 19, 2018, finding Plaintiff was not disabled. T. 18-35. On September 18, 2019, the Appeals Council denied Plaintiff's request for review. T. 1-3. Thus, Plaintiff sought judicial review. Doc. 1.

#### C.  The ALJ's Decision

In her December 19, 2018 decision, the ALJ first found that Plaintiff met the insured status requirements through December 31, 2019. T. 23. The ALJ then found that Plaintiff had not engaged in any substantial gainful activity since her alleged onset date of April 1, 2016. *Id.* Plaintiff had the following severe impairments: fibromyalgia; supraspinatus tendinitis/degenerative joint disease of the right shoulder; trochanteric bursitis of bilateral hips; gastroesophageal reflux disease (GERD); dry eye syndrome; headaches; obesity;

bipolar disorder; and PTSD. T. 24. According to the ALJ's finding, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed statutory impairments. *Id.* In making this finding, the ALJ concluded that Plaintiff had moderate limitations in (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself. T. 25.

Next, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that she:

> can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch, and crawl. She must avoid work at unprotected heights and around hazardous machinery. She can understand, remember, apply and carry out simple repetitive instructions. She can persist at that level of complexity for eight hours a day, five days a week consistently. She can have non-transactional interaction with the general-public, and she can have occasional interaction with co-workers and supervisors. She can adapt to routine changes in the work setting that are gradually introduced and occasional in nature.

T. 26. Based on that RFC, Plaintiff was unable to perform her past relevant work as a delivery driver, fast-food worker, or fast-food team leader. T. 33-34. However, considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, such as an assembler, a marker, and a night cleaner. T. 34-35. Accordingly, the ALJ found that Plaintiff had not been under a disability from her alleged onset date of April 1, 2016 through the date of the ALJ's decision on December 19, 2018. T. 35.

## IV.    ISSUE BEFORE THE COURT

Plaintiff presents a single issue for the Court to consider in its review of the Commissioner's decision: Did the ALJ give proper weight to the opinion evidence of Plaintiff's psychiatrist, Dr. Fernando Lopez[2]?

## V.    DISCUSSION

On April 10, 2017, Dr. Lopez completed a psychiatric evaluation form regarding Plaintiff. T. 584-86. In her December 19, 2018 decision, the ALJ stated the following regarding Dr. Lopez's opinion:

> On April 10, 2017, Fernando Lopez, M.D., with SpectraCare completed a disability questionnaire finding [Plaintiff] to have marked limitations in her ability to interact appropriately with the general-public; degree of deterioration of personal habits; ability to perform activities within a schedule; maintain regular attendance and be punctual with customary tolerances; and ability to respond to customary work pressures. She was found to have moderate limitations in all other areas, including her ability to understand, remember, and carry out repetitive tasks; maintain attention and concentration for extended periods; sustain a routine without special supervision; respond appropriately to supervision[;] make simple work-related decisions[;] and respond appropriately to changes in the work setting[.]

T. 29. The ALJ then assigned "partial weight" to Dr. Lopez's opinion, stating: "The records from SpectraCare are more consistent with waxing and waning symptoms when reviewed carefully. Thus, overall they are more consistent with moderate limitations. There is nothing to support ongoing marked limitations as opined by Dr. Lopez." T. 32.

---

[2] As will be discussed below, Plaintiff claims that Dr. Lopez is Plaintiff's treating psychiatrist. The Commissioner argues that, at the time of Dr. Lopez's opinion, he was not a treating medical source.

Plaintiff argues that the ALJ failed to give great weight to Dr. Lopez's opinion without providing sufficient rationale for doing so. Doc. 14 at 8. Accordingly, Plaintiff argues that the ALJ's decision is not supported by substantial evidence. In response, the Commissioner argues that Dr. Lopez was not Plaintiff's treating psychiatrist at the time of his opinion—and, therefore, his opinion was not entitled to great weight—and, regardless, substantial evidence supports the ALJ's decision to give partial weight to Dr. Lopez's opinion. Upon independent consideration of the record, the Court agrees with the Commissioner.

### A. The record does not reflect that Dr. Lopez was Plaintiff's treating physician at the time of his opinion and, therefore, his opinion was not entitled to great weight.

An ALJ should consider several factors when evaluating a doctor's opinion, including whether the doctor examined the claimant, whether the doctor treated the claimant, the evidence the doctor presents to support his or her opinion, and whether the doctor's opinion is consistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). A treating doctor's opinion is generally entitled to more weight than a non-treating doctor's opinion, and an ALJ must give good reasons for discounting a treating doctor's opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). In contrast, a non-treating doctor's opinion is not entitled to any special deference or specific level of consideration. *See Crawford v. Comm'r of Soc. Sec*, 363 F.3d 1155, 1160 (11th Cir. 2004) (finding physician who examined plaintiff on only one occasion was not a "treating physician" and, therefore, her opinion was not entitled to great weight) (citing *McSwain v. Bowen*, 814 F.2d 617, 619

(11th Cir. 1987)); *Ziglar v. Berryhill*, No. 2:18-CV-567, 2019 WL 2387047, at *7 (M.D. Ala. June 4, 2019) ("As a non-treating physician who examined [plaintiff] only twice, [the physician's] opinion is not entitled any special deference.").

The threshold issue is whether Dr. Lopez constituted a treating source at the time of his opinion such that his opinion is entitled to great weight. *See Rogers v. Colvin*, No. 1:14cv1352, 2015 WL 4624812, at *5 (N.D. Ala. Aug. 3, 2015) ("Because [the physician] was not a treating physician at the time of his opinion, his findings and opinions were not entitled to any special deference or consideration."). A "treating source" is defined as the claimant's own acceptable medical source who provides the claimant with medical treatment or evaluation and who has an "ongoing treatment relationship" with the claimant. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An "ongoing treatment relationship" may be established when the medical evidence demonstrates that the claimant sees, or has seen, the medical source "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." *Id.* However, if the claimant's relationship with the medical source is not based on her medical need for treatment or evaluation, but simply on her need to obtain a report in support of her claim for disability, that medical source will not constitute a treating source. *Id.*

In her brief, Plaintiff repeatedly refers to Dr. Lopez as her treating psychiatrist. However, she provides no support that Dr. Lopez provided her with medical treatment or evaluation on an ongoing basis before, or at the time of, his opinion in April 2017. She notes that she received treatment at "SpectraCare (Dr. Lopez's place of practice)," and that Dr. Lopez treated her "on multiple occasions," but the treatment records to which she cites

do not establish an ongoing treating relationship between her and Dr. Lopez during the relevant time period.[3] At the time of his opinion, Dr. Lopez was a psychiatrist at SpectraCare Health Systems. T. 584-86. Plaintiff first presented to SpectraCare for mental health care on February 8, 2017 (T. 552), and she returned to SpectraCare numerous times thereafter for various mental health services, on February 13 (T. 574), February 14 (T. 567), February 21 (T. 569), and March 10 (T. 581). There is no indication in these records that she met with Dr. Lopez, or that he provided her with treatment, on any of these occasions. Rather, it appears that the first date on which Dr. Lopez appears in the medical record is April 10, 2017, when he completed the disability survey at issue here. T. 584-86.

In fact, the first record indicating Dr. Lopez performed actual evaluation of Plaintiff was not until July 14, 2017, more than three months after his completed survey. T. 655. In his notes from that visit, Dr. Lopez references that Plaintiff was last seen (by the practice) on May 11, 2017 (T. 656); according to the records, Plaintiff was examined only by Dr. Esiri Esin on that date, not Dr. Lopez. T. 651-654. Dr. Lopez then examined Plaintiff on October 6, 2017 (T. 703) and then again on April 18, 2018 (T. 745), long after he filled out Plaintiff's disability survey.

Plaintiff's treatment records reflect that, from February 2017 through the date of Dr. Lopez's opinion, Plaintiff saw numerous medical professionals at SpectraCare. However, this merely indicates that Plaintiff maintained an ongoing relationship *with SpectraCare*

---

[3] In support of her claim, Plaintiff cites to pages 623-727 and 762-859 of the record. However, these pages of the record do not establish an ongoing treatment relationship between Plaintiff and Dr. Lopez before, or at the time of, his April 2017 opinion. Instead, these records appear to indicate that Plaintiff saw numerous other medical personnel at SpectraCare during that time, including Brianna Grayson, Cindy Woodall, and Dr. Esiri Esin, but that she did not meet with Dr. Lopez until July 2017 (*see* T. 655).

and not *with Dr. Lopez*. Indeed, the Court sees nothing in Plaintiff's SpectraCare treatment records that demonstrates such a relationship with Dr. Lopez before or at the time of his opinion in April 2017. Therefore, the Court cannot find that Dr. Lopez was a treating source at the time he rendered his April 2017 opinion and, thus, the opinion is not entitled to great weight. *See Medina v. Social Sec. Admin.*, 636 F. App'x 490, 493 (11th Cir. 2016) (finding doctor did not constitute a treating source "because he did only one examination of [plaintiff] and did not have an ongoing treatment relationship with her").[4]

## B. Substantial evidence supports the ALJ's decision to assign partial weight to Dr. Lopez's opinion.

The Commissioner's decision can be affirmed on the Court's conclusion that Dr. Lopez was not Plaintiff's treating source and his opinion was, therefore, not entitled to great weight. In any event, if Dr. Lopez was a treating source at the time he rendered his opinion, the outcome would not differ. Upon an independent review of the record, the Court

---

[4] *See also Stevens o/b/o L.R. v. Colvin*, No. 1:14-CV-136, 2015 WL 13021663, at *7 (N.D. Ga. Sept. 11, 2015):

> [A] doctor who does not directly examine a claimant, examines a claimant only once or twice, or examines a claimant solely in relation to a claim for disability does not quali[f]y as a treating source. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (noting that doctor who examined claimant on only one occasion was not a treating physician); *Wood v. Astrue*, No. 8:10-CV-2373-T-17AEP, 2012 WL 834137, at *5 (M.D. Fla. Feb. 14, 2012), *report and recommendation adopted*, No. 8:10-CV-2373-T-17AEP, 2012 WL 834132 (M.D. Fla. Mar. 13, 2012) (psychiatrist who evaluated claimant twice upon separate admissions to hospital but had no follow-up or ongoing treatment relationship on an outpatient basis did not qualify as a treating source); *Gunter v. Astrue*, No. 1:10-CV-967-SRW, 2012 WL 1031437, at *7 n.11 (M.D. Ala. Mar. 27, 2012) (concluding that clinical director who reviewed and approved plaintiff's counselor's intake and annual update assessments and treatment plans was not the plaintiff's treating psychologist because she never personally evaluated the plaintiff); *Yarbrough v. Astrue*, No. 5:12-CV-00754-RDP, 2013 WL 4434013, at *5 (N.D. Ala. Aug. 15, 2013) (finding that doctor who saw plaintiff more than two months after she filed application for disability and did not provide any treatment for diagnosed conditions was not a treating physician).

nevertheless finds that (1) the ALJ sufficiently explained her reasoning for assigning the opinion "partial weight" and (2) her reasoning was supported by substantial evidence. An ALJ is required to give a treating source's medical opinion "substantial or considerable weight absent good cause." *Id.* (citing *Winschel*, 631 F.3d at 1179 and 20 C.F.R. § 404.1527(c)(2)). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Id.* (quoting *Winschel*, 631 F.3d at 1179).

Here, the ALJ specifically provides that she assigned Dr. Lopez's opinion "partial weight" because "[t]he records from SpectraCare are more consistent with waxing and waning symptoms when reviewed carefully" and, thus, are overall "more consistent with moderate limitations." T. 32. Upon review of those records, the undersigned finds the ALJ's reasoning to be properly supported by substantial evidence. *See Sarli v. Berryhill*, 817 F. App'x 916, 918-19 (11th Cir. 2020) (finding ALJ's decision to accord only "partial weight" to the opinions of plaintiff's treating physicians proper where ALJ provided good cause for doing so and his reasons were supported by substantial evidence); *see also Medina*, 636 F. App'x at 493-94 ("The ALJ explained that he gave [the treating doctor's] medical opinion little weight because her opinion was based on [plaintiff's] subjective complaints and she did not conduct any objective tests. That articulation of reasons is sufficient to show good cause, especially in light of the contrary medical evidence[.]").

Dr. Lopez opined that Plaintiff has marked limitations in her ability to interact appropriately with the general public, in her ability to maintain regular attendance and be

punctual with customary tolerances, and in her degree of deterioration of personal habits. T. 584-85. However, as noted by the ALJ, Plaintiff's treatment records from SpectraCare demonstrate that Plaintiff regularly attended group sessions and was active in discussion; her mood was stable; she had a positive response to intervention(s); and she made progress toward goals and objectives. T. 25, 677, 680, 686. She was also found to have good hygiene and a cooperative attitude. T. 764, 771.

For instance, in September 2017, Plaintiff was active in her group discussion. T. 30, 677. She had no suicidal or homicidal gestures or ideas. *Id.* Her mood was stable, and she reported no new issues. *Id.* The topic was positive confrontation, and the group worked on developing skills for positive conflict resolution. *Id.* Plaintiff had a positive response to the session, indicating that the information provided would be helpful to address problems with future confrontations. *Id.*

Next, in November 2017, Plaintiff was again active in group discussion and showed interest; she had no suicidal or homicidal gestures or ideas; her mood was stable; and she reported no new issues. T. 30, 680. The topic was forgiveness, and the group worked on challenging negative thoughts and enjoying the benefits of forgiveness. *Id.* Plaintiff again had a positive response to the session. *Id.*

Approximately two months later, in January 2018, Plaintiff was again active in discussion; she had no suicidal or homicidal gestures or ideas; her mood was stable; and she reported no new issues. T. 30, 686. The topic was changing one's attitude, and the group worked on attitude changes that could help in mental health treatment. *Id.* Plaintiff

14

again had a positive response to the session. *Id*. After each of these group sessions, Plaintiff was told to return to the next group session, which she continued to do.

Additionally, in April and May 2018, SpectraCare case management notes document that Plaintiff had good hygiene; her attitude was cooperative; and that she was medication compliant with no side effects. T. 31, 764. In June 2018, SpectraCare case management notes document that Plaintiff was medication compliant; that she had recently seen her son and was feeling much better; and that she voiced no issues or concerns. T. 769. Later in June 2018, Plaintiff was again found to have good hygiene; her attitude was cooperative; she was medication compliant; and she reported that she had attended her last group therapy session with no issues. T. 771. These records, indicating that Plaintiff regularly attended her appointments, was active in group discussions with other individuals and responded positively to those discussions, and maintained good hygiene and a good attitude, support the ALJ's finding that Plaintiff had only moderate, rather than marked, limitations in her ability to interact appropriately with the general public, her ability to maintain regular attendance and be punctual with customary tolerances, and her degree of deterioration of personal habits. These records also support the ALJ's reasoning that "[t]he records from SpectraCare are . . . consistent with waxing and waning symptoms." T. 32.

Dr. Lopez also opined that Plaintiff had marked limitations in her ability to respond to customary work pressures. T. 585. However, as noted by the ALJ, the record indicates that Plaintiff's mental status examination findings have generally been found to be normal or minimally abnormal and, when Plaintiff is compliant with her medication, medication is successful in helping her maintain control of her symptoms. T. 32, 729-30. Based on this

evidence, the ALJ found that Plaintiff can generally understand, remember, apply and carry out simple repetitive instructions; she can persist at that level of complexity for eight hours a day, five days a week; she can have non-transactional interaction with the general public; she can have occasional interaction with co-workers and supervisors; and she can adapt to routine changes in the work setting that are gradually introduced and occasional in nature. T. 26, 33.

Plaintiff argues that there is evidence in the record that supports the opinions of Dr. Lopez, and she cites to that evidence in her brief. However, this Court's review "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted). In this case, as addressed above, the Court finds that substantial evidence supports the findings of the Commissioner and that the correct legal standards were applied. Thus, although there may also be some evidence in the record supporting a finding contrary to the ALJ's, the Court is not entitled to decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *See Winschel*, 631 F.3d at 1178. This is true even if the evidence preponderates against the ALJ's findings.[5] *See Gibbs v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 799, 800 (11th Cir. 2017).

---

[5] Plaintiff argues that the ALJ may have "misunderstood" Dr. Lopez's opinion. For instance, Plaintiff takes issue with the fact that the ALJ noted a failure to follow prescribed treatment but failed to consider that perhaps Dr. Lopez believed Plaintiff's issues with medication compliance were the result of psychiatric symptoms. *See* Doc. 14 at 8-9. Plaintiff argues that the ALJ "had a duty to re-contact Dr. Lopez to seek additional information as to the basis for his opinions." *Id.* at 9 (citing 20 C.F.R. §§ 404.1512(e), 416.912(f)). However, the cited provisions indicate that an ALJ will recontact a medical source only when

## VI.    CONCLUSION

For the reasons set forth above, the undersigned finds that the ALJ's determinations are supported by substantial evidence and that the ALJ correctly applied the law.

Accordingly, it is ORDERED that:

1.     The decision of the Commissioner is AFFIRMED.

2.     A final judgment will be entered separately.

       DONE this 26th day of March, 2021.


                                        /s/ Kelly Fitzgerald Pate
                                        KELLY FITZGERALD PATE
                                        UNITED STATES MAGISTRATE JUDGE

---

the already-provided evidence "is inadequate for [the ALJ] to determine whether [the claimant is] disabled." 20 C.F.R. § 404.1512(e); *Couch v. Astrue*, 267 F. App'x 853, 855 (11th Cir. 2008) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)). Here, as discussed above, there is substantial evidence in Plaintiff's medical record to support the ALJ's findings, so the ALJ had no duty to recontact Dr. Lopez. *See Couch*, 267 F. App'x at 855 (finding duty to recontact did not arise where substantial evidence supported the ALJ's determination that claimant was not disabled).